Peyman Roshan, SB#303460
1757 Burgundy Place
Santa Rosa, CA 95403
Telephone: (415) 305-7847
roshan@pursuelegal.com

In Pro Per

FILED
MAY 09 2024
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA CV24 2789

| | |
|---|---|
| PEYMAN ROSHAN, an individual on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHIKA SUNQUIST, IN HER OFFICIAL CAPACITY AS CALIFORNIA REAL ESTATE COMMISSIONER, AND IN HER PERSONAL CAPACITY; DOUGLAS MCCAULEY IN HIS PERSONAL CAPACITY; CALIFORNIA DEPARTMENT OF REAL ESTATE; AND DOES 1-10, INDIVIDUALS WHOSE CAPACITY IS UNKNOWN.<br><br>Defendants. | Case No.: 4:21-cv-01235-JST P.B. **JCS**<br><br>**COMPLAINT FOR:**<br><br>(1) RELIEF FOR VIOLATION OF CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. §1983;<br>(2) DECLARATORY JUDGMENT UNDER 28 U.S.C. §2201 AND F.R.C.P. 57; AND<br>(3) ADMINISTATIVE MANDAMUS PURSUANT TO CAL. CODE CIV. PROC. §1094.5<br><br>JURY DEMAND |

-1-
COMPLAINT

Plaintiff PEYMAN ROSHAN hereby alleges as follows:

## JURISDICTION

1.      This Court has jurisdiction over each count pursuant to 28 USC §1331 and as to state law claims under court three 28 USC §1367. Venue is proper in this district and Division because events that gave rise to the claims occurred in San Francisco, CA, within the Northern District of California, and the Defendants have offices in Oakland.

## THE PARTIES

2.      Plaintiff, PEYMAN ROSHAN ("ROSHAN"), is an attorney and real estate broker admitted to practice in California and various federal courts who resides in the County of Sonoma, State of California. Until the actions of Defendants, he held a right to a valid real estate broker's license issued by the California Department of Real Estate.

3.      Defendant, CHIKA SUNQUIST ("SUNQUIST "), was at the time this lawsuit was filed the California Commissioner of Real Estate appointed by California Governor Newsom, assuming office on January 3, 2024. The Commissioner of Real Estate is the head of Defendant the CALIFORNIA DEPARTMENT OF REAL ESTATE ("DRE"), which is an California Executive Branch agency that is a part of the California Business, Consumer Services and Housing Agency. The DRE licenses real estate brokers and salespeople.

4.      Defendant, DOUGLAS McCAULEY ("McCAULEY") was at all relevant times prior to January 3, 2024, the California Real Estate Commissioner.

5.      Defendants, DOES 1-10, are individuals whose capacities and role in violating the rights of Plaintiff are unknown at this time.

-2-
COMPLAINT

## THE FACIAL CONSTITUTIONAL INADEQUACIES OF CALIFORNIA'S ATTORNEY DISCIPLINARY RULES AND PRACTICES

6.    Under decades of United States Supreme Court authority, attorney discipline procedures are required to adhere to the requirements of due process reserved for the most important personal and property interests of individuals. These proceedings have been labeled "quasi-criminal", and a respondent party is entitled to notice, a full and fair opportunity to be heard, including cross-examination and to be represented by counsel, an independent and fair tribunal, the right to have process of the tribunal to obtain the presence of witnesses and production of documents to testify and be entered as evidence, and where the tribunal is not a court, meaningful judicial review.

7.    One of the leading cases on this point is *In re Ruffalo,* 390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968). In this case the United States Supreme Court ruled that:

> In the present case petitioner had no notice that his employment of Orlando would be considered a disbarment offense until after both he and Orlando had testified at length on all the material facts pertaining to this phase of the case. As Judge Edwards, dissenting below, said, "Such procedural violation of due process would never pass muster in any normal civil or criminal litigation." 370 F. 2d, at 462.
>
> These are adversary proceedings of a quasi-criminal nature. Cf. *In re Gault,* 387 U. S. 1, 33. The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh.

*In re Ruffalo, supra, at* 550-551.

8.    In *Ruffalo,* after the accused attorney Ruffalo testified, his testimony was used as justification for a motion to amend the notice of charges against Ruffalo, and the trial was continued for several months to permit him to put together a defense to the new charges. *Id.* Thus the explicit, specific holding of *Ruffalo* is

-3-

COMPLAINT

that in an attorney disciplinary proceeding, amending the complaint after the accused has testified, even if additional time to respond is granted, is a violation of the right to notice.

9.    In a series of cases in 1989 through 1990, the California Supreme Court decided to reject *Ruffalo,* and explicitly held that what the Supreme Court ruled was unconstitutional in *Ruffalo* would be permitted in California attorney disciplinary proceedings:

> Petitioner contends that the review department's conclusion that he engaged in "multiple acts of misappropriation" was improper because the notice to show cause charged only a single act of misappropriation. Petitioner argues that, by making findings beyond the scope of the charging document, the review department denied him his fundamental right to notice of the charges against him and an opportunity to defend against them.
>
> An attorney may not be disciplined for a violation not alleged in the notice to show cause. (*Van Sloten v. State Bar* (1989) 48 Cal.3d 921, 928 [258 Cal. Rptr. 235, 771 P.2d 1323]; *Gendron v. State Bar* (1983) 35 Cal.3d 409, 420 [197 Cal. Rptr. 590, 673 P.2d 260].) When the evidence at the hearing discloses misconduct not charged in the original notice, the State Bar may move to amend the notice to conform to the proof; but, if the State Bar fails to do so, the attorney may be disciplined only for the misconduct alleged in the original notice. (*Ibid.; see also, Rose v. State Bar* (1989) 49 Cal.3d 646, 654 [262 Cal. Rptr. 702, 779 P.2d 761].)
>
> Although evidence of uncharged misconduct may not be used as an independent ground of discipline, it may be considered for other purposes relevant to the proceeding. (*See, e.g., Arm v. State Bar* (1990) 50 Cal.3d 763, 775 [268 Cal. Rptr. 741, 789 P.2d 922].) Here, evidence of uncharged misconduct was relevant to establish a circumstance in aggravation.

*Edwards v. State Bar* (1990) 52 Cal.3d 28, 35-36; *see also Grim v. State Bar* (1991) 53 Cal.3d 21, 33-4.

10.    The California Supreme Court, by multiple published opinions, explicitly permitted the State Bar to take the actions prohibited in *Ruffalo.* On information and belief, since that time, the Chief Trial Counsels, which under the State Bar Act are responsible for drafting the Rules of Procedure of the State Bar of

California (the "Rules of Procedure") which govern all attorney discipline proceedings, have eliminated all meaningful rights to notice of charges. There are four elements to such notice:

(i) What are the FACTS that the Chief Trial Counsel alleges occurred?

(ii) What are the DUTIES that the Chief Trial Counsel claims were violated?

(iii) What is the EVIDENCE supporting the FACTS alleged by the Chief Trial Counsel ?

(iv) What is the THEORY that connects the alleged FACTS and EVIDENCE to the alleged violation of the DUTIES?

11. On information and belief, prior to 2010, a notice of disciplinary charges ("NDC") was required to inform the respondent of items (i), (ii), and (iv). This obligation was set out by the State Bar Court Review Department twenty years ago in *In Re Varakin* (Review Dept. 1994) 3 State Bar Ct. Rptr. 179, 185.

12. On information and belief, prior to 2010 a respondent attorney could use the tools of civil discovery to learn items (i), (ii), (iii) and (iv) if the respondent attorney needed additional clarification.

13. Under the current Rules of Procedure, a respondent is only entitled to learn items (i) in an abbreviated form, without the specifics of time, place and manner of the alleged misconduct and (ii) in an abbreviated form from the NDC and the preliminary notice letter, which only includes the citation of the relevant statute from the State Bar Court and quoting the language of the statutory provision cited; the right to use interrogatories and requests for admission have been eliminated, thus the use of discovery to supplement any inadequacy in the NDC is gone. While the Chief Trial Counsel (and by extension the lawyers he or she supervises, known as the Office of Chief Trial Counsel, or "OCTC") is required pursuant to Bus. & Prof. Code §6085(b) to hand over copies of the documents in its possession which are exculpatory and required under due process to provide documents that may be used to support the claim, even where the OCTC complies, there is no obligation to explain which documents will be used to prove what facts in support of which

-5-

claims. In addition, on information and belief, as a matter of practice and unpublished decisional law, the State Bar Hearing Department and Review Department do not recognize the right to see the entire State Bar file, therefore non-privileged information which could be exculpatory is never disclosed; indeed, the State Bar Hearing Department and Review Department have required the respondent attorney demonstrate that the information claimed as privileged be proven to be not privileged without any kind of inspection; therefore the Chief Trial Counsel and OCTC have successfully defeated motions to disclose because disclosure would include file tabs and indexes.

14. On information and belief, the position of the Chief Trial Counsel (and the OCTC which acts under him or her) is that a respondent attorney is only entitled to learn item (ii); in 2015, after the imposition of revisions to the Rules of Procedure eliminating detailed fact pleading, the Hearing Department Judges thought this inadequate, and issued disclosure orders that require both parties to disclose items (i) and (iii), but not item (iv). Disclosure of the THEORY of the Chief Trial Counsel's case is necessary to allow a respondent to assemble the correct arguments and evidence to rebut it. On information and belief, the Chief Trial Counsels (and by extension the OCTC) have demonstrated that they are perfectly willing to change their theory of the case, in violation of a respondent's due process rights, even after the trial.

15. On information and belief, since 2010 the Chief Trial Counsels have caused the State Bar to materially alter the due process protections that have been present in the State Bar disciplinary process for decades. Published federal and state decisional law identifies the due process guarantees of Bus. & Prof. Code §6085 as statutory rights that provide more than the minimum guarantee of due process rights. However, on information and belief, it was only in the course of litigating the State Bar case and related cases that the State Bar Court admitted that the supposed due

process guarantees in Bus. & Prof. Code §6085 are not enforceable or self-executing, and it is the State Bar Court Rules of Procedure which contain the only actionable rights in State Bar Court proceedings. On information and belief, the purpose of these changes has been openly declared to reduce the amount of work that the Chief Trial Counsel and the OCTC must perform in a prosecution and to increase the speed of proceedings; the undeclared but obvious purpose is to railroad innocent lawyers by eliminating their ability to contest prosecutions that are unsupported by law or evidence or obtain dismissals of meritless proceedings at an early stage. There is no shortage of recent examples of such prosecutions. *See, e.g. In re McHugh* (Hearing Dept. July 1, 2013) Docket No. 07-O-14334-DFM; *In re Robinson* (Review Dept. Sept. 19, 2013) Case No. 12-O-10716; *In Re Bradshaw* (Review Dept. July 30, 2019) Docket No. 16-0-15558. On information and belief, the purpose of these improper prosecutions is to raise the prosecution rate to hide the fact that the Chief Trial Counsels and OCTC have for decades refused to pursue valid complaints against attorneys who are closely connected to California judges, the Board of Trustees of the State Bar, Chief Trial Counsel, and the OCTC. A case in point is Thomas V. Girardi, whose decades of stealing client moneys and misconduct was, on information and belief, ignored by the Chief Trial Counsel and OCTC until the Los Angeles Times published an exposé detailing the misconduct which the Chief Trial Counsels had refused to prosecute. It is an established violation of due process for a court to treat some defendants more harshly in order to balance out leniency improperly granted to other defendants. *See Gacho v. Wills,* No. 19-3343 (7th Cir. February 8, 2021); *Bracy v. Gramley,* 520 U.S. 899 (1997).

16.    On information and belief, prior to 2013, the Chief Trial Counsels and OCTC filed complaints that laid out every factual element that the State Bar would seek to prove; prior to 2010, the full panoply of civil discovery tools, including interrogatories, were available. Under the 2010, 2012, and now 2019 revised Rules

-7-
COMPLAINT

of Procedure, there is no right to any of the standard tools of civil discovery.

17.    On information and belief, the prior to 2010, the combination of the fully pled complaints and discovery tools gave both the State Bar Court and respondents a clear understanding of the version of reality and the law that the Chief Trial Counsels and OCTC asserted is true; these rights have been erased. First, the 2010 Rules of Procedure eliminated references to discovery requests such as interrogatories and requests for admission and may have erased their availability entirely. On information and belief, on or around 2013, the Chief Trial Counsel pushed through a revision of Rule 5.41 which replaced the existing pleading rules with California criminal notice pleading.

18.    On February 20, 2013 the former Chief Trial Counsel, Jayne Kim, sent out a memo arguing for a change in Rule 5.41 to criminal style "notice pleading." She wrote at pages 3-4 that:

> "Notice pleading" is the form of pleading that is typically used in the criminal arena and is embodied by the accusatory pleadings used in California criminal procedure. Traditionally, a "notice pleading" consists of a brief general statement of the matter involved, sufficient merely to give the opposing party reasonable notice of the claim, and omitting any detailed statement of the ultimate facts. (4 Witkin, California Procedure (5th ed. 2012) Pleading, section 379.)

> Presumably, this short form of pleading, as opposed to fact pleading, is sufficient in criminal cases, as opposed to a civil dispute between private parties, because the duty of all citizens to refrain from the commission of criminal acts is universal and need not be factually established in a criminal accusation to satisfy due process notice concerns. Similarly, a member's duties and oaths vis a vis the Rules of Professional Conduct and the State Bar Act are also presumed, such that facts which provide the member notice of the essential elements of the State Bar's case should be sufficient.

J. Kim, OCTC, February 20, 2013 Memo at 3-4.

19.    The Board of Trustees' RAD Committee which approves changes to the Rules of Procedure, passed this rule change even though the due process analysis

COMPLAINT

is a complete fiction. *Id.* The California Supreme Court has held that notice pleading in a criminal information is completely INADEQUATE for due process purposes and is nothing more than a formality, because

> the information has a "limited role" of informing defendant of the kinds and number of offenses; "the time, place, and circumstances of charged offenses are left to the preliminary hearing transcript," which represents "the touchstone of due process notice to a defendant." (*People v. Jeff, supra,* 204 Cal. App.3d at p. 342; *see also People v. Thomas* (1987) 43 Cal.3d 818, 829 [239 Cal. Rptr. 307, 740 P.2d 419]; *People v. Martinez, supra,* 197 Cal. App.3d at pp. 779-780 [dis. opn.]; *People v. Gordon, supra,* 165 Cal. App.3d at pp. 868-870 [conc. opn.]; *People v. Dunnahoo, supra,* 152 Cal. App.3d at p. 571.)

*People v. Jones* (1990) 51 Cal.3d 294, 312.

20. As the *Jeff* decision endorsed by the California Supreme Court explained,

> An information which charges a criminal defendant with multiple counts of the same offense does not violate due process so long as (1) the information informs defendant of the nature of the conduct with which he is accused and (2) the evidence presented at the preliminary hearing informs him of the particulars of the offenses which the prosecution may prove at trial. (*People v. Jordan* (1971) 19 Cal. App.3d 362, 369-370 [97 Cal. Rptr. 570]; *People v. Tolbert* (1986) 176 Cal. App.3d 685, 690, fn. 2 [222 Cal. Rptr. 313].) The information plays a limited but important role — it tells a defendant what kinds of offenses he is charged with and states the number of offenses that can result in prosecution. However, the time, place, and circumstances of charged offenses are left to the preliminary hearing transcript. This is the touchstone of due process notice to a defendant. (*People v. Gordon, supra,* 165 Cal. App.3d 839, 870-871 (conc. opn. of Sims, J.).) So long as the evidence presented at the preliminary hearing supports the number of offenses charged against defendant and covers the timeframe(s) charged in the information, a defendant has all the notice the Constitution requires.

*People v. Jeff* (1988) 204 Cal.App.3d 309, 341-342.

21. The California appellate courts have repeatedly made clear that

COMPLAINT

criminal notice pleading is only permissible because there is a mini-trial—the preliminary hearing—in which the prosecution must put on witnesses who are cross-examined and in which the entire theory of the case and evidence is put forward in a hearing. *People v. Jeff, supra; People v. Jones, supra.*

22.    The standards for the State Bar's NDC are facially constitutionally inadequate because there is no preliminary hearing and no right of discovery in State Bar proceedings.  The current Rules of Procedure are thus facially unconstitutional in those instances where the NDC is written at the minimum required level, which is all of them, and discovery is denied or unavailable, which is all of the cases where discovery has been requested by attorneys in the past nine years.

23.    Along with the power to amend the NDC after the trial has begun, the Rules of Procedure allow the Chief Trial Counsel (and by extension the OCTC) to amend the NDC and add charges right up to the date of trial, and as a matter of practice, written and unwritten policy, and State Bar Court case law, no adequate time to prepare a defense to new charges is granted.

24.    The Rules of Procedure, and the Review Department case law, do not recognize a constitutional right of an attorney to be represented by counsel and the statutory right is no enforceable; accordingly, the State Bar Court may refuse to hear counsel, or refuse requests for continuances required by counsel, on an arbitrary basis.  This violates a fundamental tenet of due process under *Goldberg v. Kelly,* 397 U.S. 254, 270-271 (1970).

25.    The pattern and practice of the State Bar Courts, set out in written orders, is to limit and deny continuances when requested by a respondent attorney, but to grant them when the Chief Trial Counsel, OCTC or the State Bar Court judge is inconvenienced; thus the State Bar Court judges have interrupted cases and stayed them for five years because the State Bar Court Hearing Department Judge does not wish to call particular witnesses before him; the Hearing Department has cancelled

COMPLAINT

trials en masse for its own convenience; and members of the OCTC have obtained continuances based on their workload; but requests for continuances of trial and motions of weeks or months by respondent attorneys are routinely denied.

26.    The State Bar Court will make and has made written rulings about the legal merits of issues involving the exclusive jurisdiction of federal courts, such as issues of patent law, copyright law, federal criminal law, and federal Employment Retirement Income Security Act, even where the issues involved have not been litigated in a federal proceeding, in violation of the Supremacy Clause and Congressional Legislation reserving certain issues to federal courts.

27.    While the State Bar Act expressly grants respondent attorneys the right to issue subpoenas for the attendance of witnesses, the Hearing Department judges do not allow a respondent to actually call witnesses for the defense if the State Bar objects, on the grounds that it is unfair to introduce evidence after the State Bar is rested, as reflected in written State Bar Court orders. The Hearing Department Judges also quash subpoenas to call back witnesses who have testified for the prosecution, as reflected in written State Bar Court orders, even if the subject matter of the testimony could not have been raised in cross-examination. On information and belief, if a witness files a motion to quash the subpoena, the Hearing Department Judges will not enforce the subpoena because the filing of the motion automatically stays the obligation to appear, and then the fact that the notice date of the subpoena has passed makes, under the State Bar Courts views, invalid. Or if a witness files a motion to quash a subpoena, the Hearing Department Judges apply the California Rules of Procedure to quash the subpoena sua sponte even without giving the respondent the statutory required notice and opportunity to be heard on the motion to quash. These rules, reflected in numerous State Bar Court orders make it impossible for attorneys defending a case to cross-examine witnesses with contradictory testimony of other witnesses or documents issued after the first

-11-
COMPLAINT

witness has appeared, or to cross-examine persons whose written statements are introduced as evidence. *See Goldberg v. Kelly,* 397 U.S. 254, 268 (1970); *Willner v. Committee on Character and Fitness,* 373 US 96, 103-104 (1963).

28.    The Rules of Procedure of the State Bar and the State Bar's written and unwritten internal rules and policies regarding prosecutions are facially unconstitutional in the following respects (which is not an exclusive list):

(i) The standard of pleading, California criminal notice pleading, is unconstitutional because it provides inadequate notice and there is no preliminary hearing or right to discovery in the form of interrogatories;

(ii) The California Supreme Court has explicitly approved the practice of amending an NDC after the trial has begun, in violation of *Ruffalo,* and the Rules of Procedure do not prohibit this;

(iii) Even if the NDC is not amended, the California Supreme Court approves the practice of increasing the penalties to be imposed on a respondent lawyer to the same extent as if the charge were added to the NDC and proven, and the Rules of Procedure do not prohibit this;

(iv)    The Hearing Department allows, and the Review Department affirms, in accordance with the Rules of Procedure, the addition of new charges up to the date of trial with no adequate additional time granted to prepare defenses against the new charges;

(v)    The Hearing Department and Review Department, in accordance with the Rules of Procedure, reject the existence of a constitutional right to counsel;

(vi) The Hearing Department and Review Department, in accordance with the Rules of Procedure, impose different standards for granting requests for continuances, and granting requests for delays of months to years desired by State Bar personnel, but regularly denying requests by attorney respondents;

COMPLAINT

(vii) The Hearing Department makes rulings of law, and the Review Department affirms such rulings, that are within the sole jurisdiction of federal courts, as permitted by the Rules of Procedure;

(viii) The State Bar Court Hearing Department and Review Department, in accordance with the Rules of Procedure, do not provide respondent attorneys with State Bar Act granted enforceable rights to issue subpoenas for third-party witnesses and documents held by third-parties, but rather apply unrelated California Code of Civil Procedure ("CCP") statutes to quash the subpoena, sua sponte, and in excess of the authority granted under the CCP;

(ix) The State Bar Court Hearing Department and Review Department, in accordance with the Rules of Procedure, do not guarantee a right to cross-examine persons concerning written statement they have made that are proposed to be entered or entered into evidence by the Chief Trial Counsel and OCTC by permitting or authorizing deposition subpoenas or trial subpoenas against such persons;

(x) The Rules of Procedure, and the State Bar's written and unwritten internal rules and policies, do not prohibit, prevent, or restrain the Chief Trial Counsel from over-aggressive prosecution of lawyers who do not have personal relationships with California judges, the State Bar Board of Trustees, the OCTC, or the Chief Trial Counsel to compensate for their refusal to prosecute lawyers with such personal relationships, or adequately ensure that such connected lawyers are prosecuted;

(xi) The Rules of Procedure at Rule 5.46 only allow disqualification of State Bar Court judges for violation of an enumerated subset California statutory rules of disqualification and not for violation of the Fourteenth Amendment; in particular, and without limitation, State Bar Court judges may not be disqualified for violating *Gacho v. Wills,* No. 19-3343 (7th Cir. February 8, 2021) or *Bracy v. Gramley,* 520 U.S. 899 (1997), and a litigant may not obtain discovery against a State Bar Court judge under *Bracy, supra,* even where there is prima facia evidence of corruption of

-13-

COMPLAINT

the State Bar Court judges; and in addition, California appellate case law bars introduction of evidence of any judges rulings to prove that the judge is not fit to serve under the Fourteenth Amendment, in violation of United States Supreme Court case law that a judge's rulings, on their own, may be sufficient to demonstrate actual bias or an intolerable risk of bias (*see, e.g., Roitz v. Coldwell Banker Residential Brokerage Co.*, 62 Cal.App.4th 716 (1998)).

## THE ROSHAN STATE BAR CASE

29.     The Chief Trial Counsel and OCTC filed disciplinary charges against ROSHAN. *In Re Roshan,* 17-O-01202; 17-0-10457.  ROSHAN was denied a brief continuance of the trial to allow counsel he had hired to prepare for 90 days.  Nine days before the trial begin, the Chief Trial Counsel and OCTC amended the notice of disciplinary charges to add two new counts, and a request for a continuance based on the last-minute amendment of the NDC was denied.   After ROSHAN'S testimony was elicited for facts unrelated to charges in the NDC, and notwithstanding his objections to the relevance of such interrogation, his testimony was coupled with irrelevant documentary evidence and used to add discipline for uncharged misconduct, which discipline is the equivalent of adding new charges.

30.     ROSHAN raised the constitutional issues in a request for review to the Review Department. In the responsive brief, the Chief Trial Counsel and OCTC stated that the Review Department lacked jurisdiction to address any constitutional arguments.  ROSHAN filed a reply brief that withdrew and reserved all constitutional arguments and only made non-constitutional arguments.  ROSHAN's non-constitutional arguments were accepted in some, but not all respects, and the State Bar Court Review Department, though overturning about half of the findings of culpability and the related counts, affirmed the disciplinary recommendation of a two-year suspension for, *inter alia,*  having violated his client's intellectual property

rights. ROSHAN filed a petition for review, which did not assert any of the constitutional issues set forth herein, with the California Supreme Court. The petition was denied on February 17, 2021.

31.    ROSHAN has standing to obtain the prospective relief requested in this action. "Standing is determined by the facts that exist at the time the complaint is filed. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 569 n. 4, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)." *Clark v. City of Lakewood,* 259 F.3d 996, 1006 (9th Cir. 2001). "To have standing….Plaintiffs must show "either 'continuing, present adverse effects' due to [their] exposure to …. past illegal conduct or 'a sufficient likelihood that [they] will again be wronged in a similar way.'" *Villa v. Maricopa County,* 865 F.3d 1224, 1229 (9th Cir. 2017)" *Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1119-20 (9th Cir. 2020)(first quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); then quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)).

32.    ROSHAN was suspended from the practice of law in California. One of the effects of prevailing in this action would be to provide a declaratory judgment that he failed to receive due process and that the State Bar Court Rules of Procedures and case law interpreting the same are unconstitutional.  This constitutes prospective relief under *Reed v. Goertz,* 143 S.Ct. 955 (2023), as the California Supreme Court would be presumed to recognize this judgment, and allow his reinstatement and erasure of his public discipline record. "[W]e reject the defendants' argument that reinstatement does not constitute prospective relief designed to end a continuing violation of federal law." *Carten v. Kent State University,* 282 F.3d 391, 396 (6th Cir. 2002); *see also Goodisman v. Lytle,* 724 F.2d 818, 820 (9th Cir. 1984)(holding that Eleventh Amendment does not bar a suit by a public employee seeking reinstatement, despite the fact that the unconstitutional termination was already completed); *Demery v. Kupperman,* 735

-15-
COMPLAINT

F.2d 1139, 1146 (9th Cir. 1984).

33.    On May 7, 2021, the State Bar Court Hearing Department ordered ROSHAN to pay disciplinary costs of $24,407.27 in three installments with each year of his State Bar membership fees, the first of which was due on February 1, 2022. The obligation to pay costs would be eliminated as part of the relief in this case, constituting prospective relief. *James v. City of Dallas,* 254 F.3d 551, 563-64 (5th Cir. 2001) (obligation to pay costs of proceeding as a collective debt constitutes actual and imminent injury in fact under *Lujan, supra.*). Because ROSHAN has not paid the disciplinary costs in full, under the current rules, his license is subject to continued suspension. *See* Rules of the State Bar, Title 2, Div. 2, Rule 2.33 ("A licensee who fails to pay annual license fees or any outstanding penalties or costs will be sent a final delinquency notice at the licensee's address of record. On information and belief, if the State Bar fails to receive full payment of the amount due within two months of sending the final delinquency notice, the State Bar will recommend that the Supreme Court suspend the licensee from the practice of law."). ROSHAN is also required to incur out-of-pocket costs as conditions of his reinstatement, including, without limitations, paying the fee to take the Multistate Professional Responsibility Exam ("MPRE") and attend State Bar Ethics school.

## THE ROSHAN DRE CASE

34.    On May 26, 2021, the DRE sent ROSHAN a letter stating "The Department has been advised that you have had a disciplinary taken against one or more of the following professional licenses: Date - 3/19/2021, Agency - California State Bar, License - 303460, Action - Suspended."

35.    The DRE commenced an action against ROSHAN to be heard before the DRE, and, pursuant to statutory requirement, to be presided over by an

administrative law judge. Cal. Gov. Code § 11512. The DRE action before the DRE is not a proceeding before a court vested with judicial power as "[t]he judicial power of this State is vested in the Supreme Court, courts of appeal, and superior courts, all of which are courts of record." Cal. Const. art. VI § 1.

36.     Bus. & Prof. Code § 10177 provides:

> "The commissioner may suspend or revoke the license of a real estate licensee, delay the renewal of a license of a real estate licensee, or deny the issuance of a license to an applicant, who has done any of the following, or may suspend or revoke the license of a corporation, delay the renewal of a license of a corporation, or deny the issuance of a license to a corporation, if an officer, director, or person owning or controlling 10 percent or more of the corporation's stock has done any of the following:
>
> …
>
> (f) Acted or conducted themself in a manner that would have warranted the denial of their application for a real estate license, either had a license denied or had a license issued by another agency of this state, another state, or the federal government revoked, surrendered, or suspended, or received an order of debarment, for acts that, if done by a real estate licensee, would be grounds for the suspension or revocation of a California real estate license, if the action of denial, revocation, surrender, suspension, or debarment by the other agency or entity was taken only after giving the licensee or applicant fair notice of the charges, an opportunity for a hearing, and other due process protections comparable to the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340), Chapter 4 (commencing with Section 11370), and Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code), and only upon an express finding of a violation of law by the agency or entity." Bus. & Prof. Code § 10177.

37.     On December 20, 2022, before the DRE, the DRE filed an Accusation in *In the Matter of the Accusation of Peyman Beykpour*, Case No. H 12623 SF (ROSHAN is erroneously named by his former surname "Beykpour").

38.     In Paragraph 2, the Accusation alleges:

"On or about February 17, 2021, following a hearing before the State Bar Court of California, Hearing Department, No. 11-O–05799, and an appeal to the State Bar Court of California, Review Department, Case No. 11-O–1202, the Supreme Court of the State of California, in Case No. S265119, ordered Respondent be suspended from the practice of law for three (3) years, stayed, with two (2) year, actual suspension, and placed on probation for three (3) years. The order from the Supreme Court of the state of California was based upon a finding that respondent violated:

(a) 2 counts of Rules of Professional Conduct, Former Rule 3-300;
(b) 1 count of Rules of Professional Conduct, Former Rule 3-400;
(c) 1 count of Business and Professions Code section 6068(a);
(d) 1 count of Rules of Professional Conduct, Former Rule 2-100(A);
(e) 1 count of Rules of Professional Conduct, Former Rule 3-700(D)(1); and
(f) 1 count of Business and Professions Code section 6106,
the commission of acts, which, if done by a real estate licensee, would be grounds for the suspension or revocation of a California real estate license pursuant to the provisions of Sections 10176(a) (Substantial Misrepresentation), 10176(i) (Fraud or Dishonest Dealing), and 10177(j) (Fraud or Dishonest Dealing) of the code."

39.    In Paragraph 3, the Accusation further alleges:

"The facts alleged…in Paragraph 2 constitute grounds under Section 10177(f) (Other License Discipline) of the Code for suspension or revocation of all licenses and license rights of Respondent under Real Estate Law."

40.    Regarding State Bar Court decisions, the California Supreme Court held:

"Statutory provisions for our review of State Bar Court decisions reflect a legislative acknowledgment that we exercise original jurisdiction over disciplinary proceedings, and that the State Bar's determinations are advisory only. (*Brotsky v. State Bar, supra,* 57 Cal.2d at p. 301.)"

*In re Rose,* 22 Cal.4th 430, 442 (Cal. 2000).

-18-

COMPLAINT

> "The State Bar Court, however, is not itself a judicial court established by article VI".

*Id.* at 438.

> "The State Bar Court exercises no judicial power, but rather makes recommendations to this court, which then undertakes an independent determination of the law and the facts, exercises its inherent jurisdiction over attorney discipline, and enters the first and only disciplinary order." ·

*Id.* at 436.

> "[O]nly this court renders decisions or orders imposing discipline."

*Id.* at 442.

> "Even if an attorney … presents a prima facie claim of legal or factual error, we properly may deny review if our independent examination of the record and evaluation of the attorney's factual and legal assertions establish that the recommended discipline should be imposed."

*Id.* at 460.

41. Regarding the California Supreme Court's exclusive authority over attorney disciplinary matters, California Courts of Appeal held:

> "[I]n California, the inherent judicial power of the superior court does not extend to attorney disciplinary actions. That power is exclusively held by the Supreme Court and the State Bar, acting as its administrative arm. (*Jacobs v. State Bar, supra,* 20 Cal.3d at p. 198.)"

*Sheller v. Superior Court,* 158 Cal.App.4th 1697, 1710 (Cal. Ct. App. 2008).

> "The State Bar conducts hearings and makes recommendations on attorney discipline as an "administrative arm" of the high court. The Supreme Court, however, retains exclusive and plenary authority over attorney discipline. *(In re Rose* (2000) 22 Cal.4th 430, 438, 444-446.)"

*Kay v. State Bar of California* A129515 (Cal. Ct. App. Oct. 31, 2011) unpublished slip. op. at 4.

42. The California Supreme Court has held that its denial of ROSHAN'S petition for review of any issue presented may have "properly" occurred if it finds "the recommended discipline should be imposed" even though the California Supreme Court's "independent examination of the record and evaluation of the

-19-
COMPLAINT

attorney's factual and legal assertions establish[ed]" that ROSHAN "present[ed] a prima facie claim of legal or factual error." *In re Rose, supra*. This is consistent with the principles of both California and Federal appellate review. "[W]here a judgment is based upon a general verdict in an action where a determination of any one of several issues presented may have formed the basis for that verdict, which does not permit the application of the doctrine of collateral estoppel to issues in a later action under circumstances where it is necessary to identify the specific issue adjudicated in the original action. (*Stout v. Pearson* (1960) 180 Cal.App.2d 211, 216 [4 Cal.Rptr. 313].)" *Rutherford v. State of California*, 188 Cal.App.3d 1267, 1285 (Cal. Ct. App. 1987).

43.    The California Supreme Court order suspending ROSHAN from the practice of law, being "the first and only disciplinary order" in the disciplinary proceedings against ROSHAN, *In re Rose, supra*, does not make "an express finding of a violation of law" as is required by the single statute forming the grounds for the DRE disciplinary action, Cal. Bus. & Prof. Code § 10177(f); it only discusses discipline, i.e., license suspension, probation, California Court Rule 9.20 compliance, and costs.

44.    The California Supreme Court's determination of ROSHAN'S attorney discipline may have been based on one of several issues presented. However, at least one of the issues presented are not, as the DRE charging statute requires, "acts, which, if done by a real estate licensee, would be grounds for the suspension or revocation of a California real estate license pursuant to the provisions of Sections 10176(a) (Substantial Misrepresentation), 10176(i) (Fraud or Dishonest Dealing), and 10177(j) (Fraud or Dishonest Dealing) of the code." Bus. & Prof. Code § 10177. Accordingly, the DRE's reference to the California Supreme Court's order is insufficient to identify and give notice to ROSHAN regarding which, if any, act the California Supreme Court determined ROSHAN committed, let alone, the charging

-20-

COMPLAINT

statutory required notice of whether any such act "if done by a real estate licensee, would be grounds for the suspension or revocation [of ROSHAN'S] California real estate license" pursuant to the statutes cited by the DRE in the Accusation.

45. On January 17, 2023, ROSHAN emailed counsel for DRE in his disciplinary matter, Megan Olson ("Olson"), stating that because the Accusation is based solely on one statute which requires the DRE show the State Bar disciplinary order was based on express findings of violations of law, but that the California Supreme Court has held that it is not bound by the findings of fact of the State Bar Court, rather it examines the entire record, weighs the evidence, and makes an independent determination and order imposing discipline; and, because the California Supreme Court's disciplinary order makes no findings of violations of law, ROSHAN requested the DRE, in its discretion, to grant the issuance of a subpoena duces tecum to the California Supreme Court for discovery of precisely what laws it determined to have been violated and the reasons therefor; or, alternatively, for the DRE to issue such a subpoena and provide ROSHAN any response. "That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto." Cal. Code Civ. Proc. § 1911. On January 23, 2023, Ms. Olson emailed ROSHAN, stating: "The Department has denied your request."

46. In 1995, the California Legislature explicitly and intentionally passed Bus. & Prof. Code §6085(b) to ensure that at a minimum the State Bar provided expanded disclosures to respondent attorneys, over and above those provided by the United State Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963). Prior to its enactment, the State Bar was involved in negotiating with the Legislature the scope of the obligations to be imposed by Bus. & Prof. Code §6085(b). At that time, the State Bar repeatedly acknowledged that the effect of Bus. & Prof. Code §6085(b)

-21-

was to affirm the application of *Brady* disclosure, and the State Bar even proposed language to expand the scope of the disclosing individuals to the entire State Bar, which expansion was included in the enacted statute. The State Bar understands what these obligations entail, as it articulated them in a closing brief, *In Re Ganz*, Cal. State Bar Court Case No. 14-O-02363-PEM (Sept. 24, 2018). Yet, On information and belief, the State Bar now rejects the application of these disclosure duties as owed by the State Bar.

47. The California Supreme Court recently held the obligation to hand over exculpatory evidence continues throughout the litigation, during the appellate process, and during collateral attacks on the order or judgment. *In re Jenkins* 14 Cal.5th 493 (Cal. 2023). At this time collateral attacks on the Supreme Court's disciplinary order are ongoing in multiple federal fora.

48. On May 16, 2023, in the DRE disciplinary matter, ROSHAN served the California State Bar requesting production, among other things, relating both to their admitted corruption (pursuant to *Bracy* and *Gacho*) and their *Brady* exculpatory material pursuant the State Bar has a continuing duty to produce pursuant to Bus. & Prof. Code §6085(b). Even though the DRE charging statute (Bus. & Prof. Code § 10177) requires the underlying disciplinary proceedings to have fairly provided an opportunity for a hearing and to provide due process rights comparable to those provided under the Administrative Procedures Act, the State Bar (supported by the DRE) moved to quash the subpoenas in part on the grounds that they are not relevant. The Administrative Order quashed the subpoenas stating "[r]espondent's subpoenas and affidavits...are overbroad...and...respondent has not demonstrated how those documents would be relevant to the accusation against respondent that is at issue before the Department". Order Quashing Subpoenas, *In the Matter of Peyman Beykpour (also known as Peyman Roshan)*, OAH No. 2023070254, filed September 14, 2023.

-22-

COMPLAINT

49.    On September 25, 2023, in an effort to ascertain the exact documents to subpoena from the State Bar, ROSHAN filed and served the DRE a motion for leave to conduct a preliminary deposition of the State Bar Custodian of Records regarding, among other things, the *Brady* exculpatory documents the State Bar has a continuing duty to produce pursuant to Bus. & Prof. Code §6085(b). The Administrative Order denied the motion stating its authority to order deposition is limited to situations where the witness "will be unable or cannot be compelled to attend" the hearing.  Order Denying Motion for Leave to Depose, *In the Matter of Peyman Beykpour (also known as Peyman Roshan)*, OAH No. 2023070254, filed October 2, 2023.

50.    On October 3, 2023, ROSHAN moved for an order for the issuance of a subpoena duces tecum on California State Bar Custodian of Records to either appear at the December 4, 2023 hearing or to produce documents at a reasonable time and place or at the hearing relating, in part, to *Brady* exculpatory documents the State Bar has a continuing duty to produce pursuant to Bus. & Prof. Code §6085(b). The Administrative Order denied the motion stating "Respondent fails to establish that the State Bar has or may have any records that are not already available to him but that may be relevant or admissible in this matter." Order Denying Motions, *In the Matter of Peyman Beykpour (also known as Peyman Roshan)*, OAH No. 2023070254, filed October 6, 2023.

51.    On October 18, 2023, ROSHAN moved for an order for the issuance of a subpoena duces tecum on California Supreme Court custodian of records to appear at the December 4, 2023 hearing and produce documents relating to the California Supreme Court's specific findings of culpability in ROSHAN'S disciplinary action. On October 25, 2023 the Administrative Order denying ROSHAN'S motion stated "Respondent did not identify the requested documents with any specificity." Order

COMPLAINT

Denying Motion, *In the Matter of Peyman Beykpour (also known as Peyman Roshan)*, OAH No. 2023070254, filed October 25, 2023.

52.    On October 31, 2023, in an effort to ascertain the exact documents to subpoena from California Supreme Court custodian of records, ROSHAN moved for an order to preliminarily depose the California Supreme Court custodian of records to ascertain the that show the California Supreme Court's findings resulting in its denial of ROSHAN'S petition for review and thereby accepting of the State Bar's recommended discipline. On November 11, 2023 the Administrative Order denying ROSHAN'S motion stated "Respondent again fails to show that the California Supreme Court has or may have any records that are not already available to him but that may be relevant or admissible in this matter." Order Denying Motion, *In the Matter of Peyman Beykpour (also known as Peyman Roshan)*, OAH No. 2023070254, filed November 3, 2023.

53.    On November 20, 2023, ROSHAN filed a motion to dismiss the amended accusation for not meeting the sole charging statute's express finding requirement. On November 22, 2023, the DRE opposed arguing, *inter alia*, ROSHAN'S motion is unauthorized and presents "factual and/or legal issues" which "are best reserved for the hearing." On November 24, 2023, ROSHAN replied citing authority stating "it is noteworthy that the [motion to dismiss] procedure *was* employed in that case, and that its propriety was never questioned by the appellate court or the parties." *Automotive Mgmt. Group v. New Motor Vehicle Bd.*, 20 Cal.App.4th 1002, 1012 (Cal. Ct. App. 1993)(emphasis in original). ROSHAN also cited the California Supreme Court's unequivocal holding that even when State Bar disciplinary respondents present to it a prima facie claim of legal or factual error, the Court properly may deny review if its independent examination of the record and evaluation of the attorney's factual and legal assertions establish that the State Bar's

-24-
COMPLAINT

recommended discipline should be imposed. *In re Rose*, 22 Cal.4th 430, 442 (Cal. 2000).

54. On December 1, 2023, ROSHAN filed the following motions in limine:

(1) Motion in Limine Number One:

(i) Citing *In re Rose, supra,* that the California Supreme Court's order suspending ROSHAN'S law license is irrelevant as is does not meet the DRE charging statute's requirement that it make express findings of violations of law because that order makes no express findings and that none can be implied as to the other charging statute's requirement that they be violations which would subject a DRE licensee to discipline as some of the State Bar's findings of culpability, which findings may have been the California Supreme Court's exclusive reason for denying review based on its conclusion that those alone would result in the discipline imposed, but which findings do not meet the charging statute's requirement that they be expressly of acts which would subject a DRE licenses to discipline.

(ii) The California Supreme Court's order is inadmissible hearsay.

(iii) Admission of the California Supreme Court's order as evidence of violations of law meeting the charging statute's requirement violates Cal. Evid. Code § 356 because the DRE tribunal denied ROSHAN the opportunity to subpoena documents from the California Supreme Court which evidence would provide a complete picture of the findings by the California Supreme Court; and absent such a complete picture, the California Supreme Court's order is inadmissible under Cal. Evid. Code § 356.

-25-

COMPLAINT

(2) Pursuant to Cal. Gov. Code § 11513(d), the Review Department's advisory opinion and recommendation to the California Supreme Court is inadmissible hearsay not subject to any exception because given the California Supreme Court will deny review if it finds the recommended discipline proper regardless of any prima facie showing of factual or legal error by the Review Department, *In re Rose, supra,* and because the California Supreme Court's order denying review makes no express findings of violations of law, the State Bar Review Department's findings cannot be used as evidence of the California Supreme Court's findings of violations of any particular laws, let alone those required on the DRE's charging statute.

(3) The State Bar Hearings Department's statements are, similar to paragraph 53(2) above, inadmissible hearsay.

(4) The DRE affidavits in its evidence bundle are inadmissible for failing to comply with the requirement of providing timely notice of intent to admit into evidence (citing Cal. Gov. Code § 11514 and *McNary v. Department of Motor Vehicles,* 45 Cal.App.4th 688, 696 (Cal. Ct. App. 1996).

55. At the December 4, 2023 hearing, ROSHAN made the following objections:

(1) As to the admission of each DRE exhibit which includes a declaration, that it inadmissible as the DRE did not provide the statutorily required notice (see paragraph 53(4) above). Overruled as to each exhibit.

-26-

COMPLAINT

(2) As to the admission of records of the State Bar Court orders, that they are inadmissible hearsay and irrelevant (see paragraph 54(1) above). Overruled as to both.

That the introduction of evidence by affidavit without the statutory required notice and without the opportunity for ROSHAN to cross-examine its author is unconstitutional. Overruled.

56.   On December 18, 2023, the Administrative Law Judge ("ALJ") issued an order proposing the DRE revoke ROSHAN'S DRE license and to pay the DRE $4,133.85 in costs. On January 23, 2024, the DRE issued a decision adopting the ALJ proposal. On February 7, 2024, the DRE issued an order nunc pro tunc correcting a clerical error in its January 23, 2024 order. On February 15, 2024, the DRE issued an order nunc pro tunc correcting a clerical error in its January 23, 2024 order.

57. On February 13, 2024, ROSHAN filed a motion for reconsideration of the DRE decision and a stay of execution. On February 16, 2024, ROSHAN filed an amended motion for reconsideration and stay, pointing to factual and legal error in the decision. On March 5, 2024, the DRE filed its order denying reconsideration.

58. ROSHAN raised issues of statutory interpretation and construction, protected the record, and exhausted his administrative remedies.

59.   Because the DRE does not exercise judicial power, it cannot adjudicate any state or federal  constitutional claims or issues, which under state law must be raised in a petition for administrative mandamus.  If such petition raised federal constitutional claims it may be filed directly in federal court. *Readylink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 762 (9th Cir. 2014)("Readylink could have avoided claim preclusion by initially requesting both administrative review and declaratory relief in federal court;" *citing City of Chi. V. Int'l Coll. Of Surgeons*, 522 U.S. 156, 163-69, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (holding that federal

COMPLAINT

district courts have supplemental jurisdiction over state law claims arising under a state administrative review statute), *and Duchek v. Jacobi,* 646 F.2d 415, 419 (9th Cir.1981) ("However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction.").

60.   ROSHAN made a timely request for the administrative record which was delivered on April 15, 2024.

///

///

///

## FIRST COUNT

### 42 U.S.C. §1983

(By ROSHAN as Against SUNQUIST and MCCAULEY. )

61.   ROSHAN hereby incorporates by this reference paragraphs 1 through 60 as if set forth in full.

### FOURTEENTH AMENDMENT RIGHTS VIOLATION

62.   The constitutional violations of the Fourteenth Amendment right to due process identified in subparagraph 28(i) is present in every single disciplinary proceeding brought by the Chief Trial Counsel.  The constitutional defects identified in subparagraphs 28(ii) through 28(vi) violate the constitutional rights of respondent attorneys under the due process clauses of the Fourteenth Amendment, and are thus facial violations as to them.  Because the California Supreme Court permits last-minute in-trial amendment of the NDC, the constitutional defects identified in subparagraphs 28(viii) through 28(ix) violate the constitutional rights of respondent attorneys and are thus facial violations as to them, even if, at the moment, they do not intend to call third-party witnesses, obtain documents held by third parties, or cross-examine anyone. The constitutional defects identified in subparagraphs 28(ii) through 28(xi) are so prevalent that they render the Rules of Procedure and the State

-28-
COMPLAINT

Bar's written and unwritten internal rules and policies regarding prosecutions unconstitutional on an overbreadth standard, in that the applications of the Rules of Procedure and the State Bar's written and unwritten internal rules and policies regarding prosecutions are unconstitutional in a majority of the cases brought by the Chief Trial Counsel and OCTC since 2010. ROSHAN'S due process constitutional rights were violated in the manner described in subparagraphs 28(i), 28(iii), 28(iv), 28(v), 28(vi), 28(vii), 28(viii), and 28(x).

63.    A lawsuit challenging attorney discipline proceedings after they are concluded may be challenged by a victim of unconstitutional procedures on general grounds, including overbreadth, and on specific grounds as applied to him based on the authoritative interpretation of the rules and procedures. *Reed v. Goertz,* 598 U.S. 230, 143 S. Ct. 955, 960-61, 215 L.Ed.2d 218 (2023). The *Rooker-Feldman* doctrine does not apply, because this action only raises general challenges to the Rules of Procedure of the State Bar Court and the written policies of the Defendants and the State Bar Court. *See D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983)(overturning D.C. Circuit opinion dismissing lawyers claims against lawyer admission and committee and holding that facial challenges may be made by a loser of completed state court proceedings); *Reed v. Goertz, supra* (rejecting *Rooker-Feldman* challenge to federal suit demanding DNA testing after losing state lawsuit because the federal lawsuit was not predicated on the state court incorrectly interpreting or applying the state law, but instead was alleging that the state law as authoritatively interpreted by state courts violated federal due process protections).

64.    The order suspending ROSHAN should be declared a violation of ROSHAN's Fourteenth Amendment federal due process rights based on the facial and facial overbreadth of the due process violations, and their application to ROSHAN after being authoritatively interpreted in this case and related case.

COMPLAINT

## VIOLATION OF CAL. BUS. & PROF. CODE §6085

65.    Cal. Bus. & Prof. Code §6085 was enacted to grant attorney respondents constitutional rights in attorney disciplinary proceedings.  However, the State Bar does not treat this statute as self-executing or independent but rather as suggestions.  The only actual due process rights that the Defendants and the State Bar Court recognize are what is in the State Bar Court Rules of Procedure as well as internal written policies and practices of the Chief Trial Counsels, the OCTC and the State Bar Court.  For example, the Defendants refuse to comply with Cal. Bus. & Prof. Code §6085(b), which the Legislature intended (and at the time the State Bar agreed) would impose the equivalent of criminal *Brady* disclosure obligations on the entire State Bar.   Last year ROSHAN'S prior counsel was able to extract from the State Bar Court the confession that it does not treat Cal. Bus. & Prof. Code §6085(b) as an enforceable obligation and instead it is merely a suggestion as to how procedures are intended to operate.  This same principal infects the application by the Defendants and the State Bar Court of the other portions of Cal. Bus. & Prof. Code §6085 to ROSHAN and other respondents.

66.    ROSHAN was denied his rights under Bus. & Prof. Code §6085(b) as he was not provided with all exculpatory information including, without limitation, information regarding corruption in the State Bar and its policies of selective prosecution.  He was denied his right to representation by counsel as guaranteed under Bus. & Prof. Code §6085(c).  He was denied his opportunity to issue subpoena to examine an OCTC witness on matters outside cross-examination as set forth in the last sentence of the statute.

67.    The Ninth Circuit has held that where the California Legislature creates statutory procedural rights, the failure of the judiciary to enforce or recognize such rights in a meaningful fashion is violation of the Fourteenth Amendment. *Redd v. Guerrero,* 84 F.4th 874 (9th Cir. 2023).  Accordingly the refusal of the Defendants

-30-

COMPLAINT

and the State Bar Court to acknowledge and enforce Bus. & Prof. Code §6085 as written and intended violated ROSHAN's federal constitutional rights.

68.   ROSHAN is entitled to a declaratory judgment that the State Bar Rules of Procedure are facially unconstitutional (including on a overbreadth basis) and on a general basis as authoritatively interpreted and applied to ROSHAN and that the articulated practices and policies set forth above are unconstitutional, and that all attorney discipline proceedings that occurred in whole or in part after 2010 are unconstitutional and violated the due process rights of the attorney defendants.  A declaratory judgment should be entered that all attorney discipline orders and judgments entered from and after 2010 other than exonerations are unconstitutional, and that all attorney discipline proceedings that are ongoing are unconstitutional.

## VIOLATION OF THE SUPREMACY CLAUSE

69.   State Courts are excluded from ruling or enforcing certain kinds of laws, including federal intellectual property law, federal criminal law, bankruptcy law, and other areas.

70.   Despite these exclusions, the California State Bar regularly addresses matters involving substantive law of exclusive federal jurisdiction and imposes attorney discipline for perceived violations of the law even where no federal court has addressed the matter.  The State Bar lacks jurisdiction to impose discipline based on alleged violations of federal law that can only be adjudicated by a federal court and have not there been adjudicated.  ROSHAN was subject to discipline in part for alleged violations of intellectual property law that no state court is permitted to adjudicate. "Indeed, the rule has long stood that "[a] state court judgment entered in a case that falls within the federal courts' exclusive jurisdiction is subject to collateral attack in the federal courts." *Gonzales v. Parks* (*In re Gonzales*), 830 F.2d 1033, 1036 (9th Cir.1987)." *In re Gruntz*, 202 F.3d 1074, 1079 (9th Cir. 1999).

-31-

COMPLAINT

71.    ROSHAN is entitled to a declaratory judgment that the State Bar Rules of Procedure and identified practices and policies are facially unconstitutional and as against ROSHAN, generally unconstitutional as authoritatively interpreted by the California Supreme Court, as violations of the Supremacy Clause.

## VIOLATION OF THE FIRST AMENDMENT

72.    State Bar disciplinary violations falls into two categories: financial misconduct and speech and petitioning acts. When it comes to speech and petitioning acts, the State Bar violates the First Amendment by penalizing certain attorneys with disfavored speech or identities as compared to other attorneys who commit the same or worse misconduct.

73.    The most easily discerned problem is with charges relating to failure to supervise other attorneys or staff.  The State Bar focuses these charges on sole practitioners and refuses to prosecute the attorneys who directed the misconduct. This is most obvious in the recent Los Angeles Department of Water and Power scandal, where the head lawyer, former City Attorney Mike Feuer, has not been made subject to discipline for his failure to supervise his immediate reports for their creation of and participation in (or his participation in) a fraud and extortion scheme because of his political connections and those of his wife, who sits on the Court of Appeal.

74.    The State Bar is also viewpoint discriminatory, in that it prosecutes whistleblowers and persons who have challenged identifiable government misconduct instead of the government lawyers committing such misconduct. It even went so far as to bring to trial disciplinary proceedings against a lawyer who tweeted against Black Lives Matter protests, while taking no action against attorneys who made similar but opposite public statements about right-wing protestors.

75.    Here, ROSHAN was prosecuted and punished because of his identity as a sole practitioner, where similar or more egregious misconduct by more powerful

-32-

attorneys or attorneys in government service was, and is, ignored. This violates his First Amendment rights.

76.    The due process violations which restrict or eliminate attorney respondents from calling witnesses and obtaining evidence is also a violation of the First Amendment right to petition.

77.    ROSHAN is entitled to a declaratory judgment that the State Bar Rules of Procedure are facially unconstitutional (including on an overbreadth basis) and, generally unconstitutional as authoritatively interpreted by the State Bar Court and California Supreme Court, and that the articulated practices and policies set forth above are unconstitutional; and that all attorney discipline proceedings that occurred in whole or in part after 2010 are unconstitutional and violated the due process rights of the attorney defendants.  A declaratory judgment should be entered that all attorney discipline orders and judgments entered from and after 2010 other than exonerations are unconstitutional, and that all attorney discipline proceedings that are ongoing are unconstitutional.

## SECOND COUNT

### DECLARATORY JUDGMENT UNDER 28 U.S.C. §2201 AND F.R.C.P. 57.

(By ROSHAN as Against ALL DEFENDANTS. )

78.    ROSHAN hereby incorporates by this reference paragraphs 1 through 60 and 62 to 77, as if set forth in full herein.

COMPLAINT

## THIRD COUNT

## WRIT OF ADMINISTRATIVE MANDAMUS

(By ROSHAN as Against DRE and SUNQUIST. )

79.    ROSHAN hereby incorporates by this reference paragraphs 1 through 60, and 62 to 77, as if set forth in full herein.

80.    In his DRE proceedings the ALJ proceeded without and/or in excess of its jurisdiction, the trial was not fair, and/or there was a prejudicial abuse of discretion; the latter of which is evidenced by the ALJ's failure to proceed as required by law, the DRE's adoption of the ALJ's decision which was unsupported by its findings, and findings which were not supported by admissible evidence.

81. ROSHAN was denied notice of what the California Supreme Court determined was his actual violations of his duties as an attorney.  Because he was denied notice of this predicate judicial fact, he could not defendant himself.

82.    ROSHAN was denied his statutory right to subpoena relevant documents and witnesses, which by virtue of being a statutory right becomes a due process right enforceable under the Fourteenth Amendment. *Redd v. Guerrero*, 84 F. 4th 874 (9th Cir. 2023). The revocation of his license therefore violated due process.

83.    The DRE and the ALJ did not proceed according to the express terms of the charging statute. In State Bar disciplinary proceeding with multiple findings of violations of law some of which are not those that would subject a DRE licensee to discipline, the charging statute cannot properly be applied to reciprocally discipline the DRE licensee. The DRE's and ALJ's reliance on the interpretation of the charging statute in *Berg v. Davi*, 130 Cal.App.4th 223, 232 (Cal. Ct. App. 2005) is improper because *Berg* does not consider the multiple-findings-not-all-subject-to-DRE-discipline scenario.

84.     The DRE sought to admit, and overruling objections, the ALJ improperly admitted evidence by affidavit when the DRE had not provided the statutory requisite notice that such evidence would be introduce.

85.     ROSHAN argued that one charging statute's requirement, that the other agency's proceedings have been fair, was not met. The DRE's adopted decision failed to expressly find the State Bar disciplinary proceedings were fair, and this Court cannot imply such a finding. (See *Woodland Hills Residents Ass'n v City Council* (1975) 44 Cal.App.3d 825, 837 (court refused to imply finding; conclusion based on statutory provisions and on *Topanga*; see also *City of Carmel-by-the-Sea v Board of Supervisors* (1977) 71 Cal.App.3d 84).

86.     The DRE's decision did not bridge the analytical gap between the State Bar's recommended discipline based on its findings and the California Supreme Court's finding that the recommended discipline is proper despite any findings by it of prima facie showing of error in law or fact, see *In re Rose, supra.*

87.     The DRE's decision that ROSHAN was found by the California Supreme Court to have violated law which would subject a DRE licensee to discipline is not supported by the evidence.

88.     ROSHAN is entitled to a writ of administrative mandamus ordering the DRE to vacate its revocation of ROSHAN'S license and restoring it. (*See Readylink, supra*, paragraph 54 above). ROSHAN is further entitled to declaratory and injunctive relief barring the DRE from taking any action against ROSHAN until such time as the State Bar's rules and practices comply with statutory and constitutional due processes.

89.     The independent judgment test should apply to the review of request for administrative mandamus.

COMPLAINT

**WHEREFORE,** Plaintiff PEYMAN ROSHAN respectfully demands the following relief on behalf of himself as follows:

<u>As to Counts 1 and 2</u>

1. A declaratory judgment against Defendants as articulated above against Defendants;

2. Reasonable attorney fees incurred in this action;

<u>As to Count 3</u>

3. A writ of administrative mandamus overturning the DRE's decision and restoring ROSHAN'S real estate license.

4. Injunctive relief if necessary to enforce the declaratory judgment as against Defendants, all persons in privity with Defendants, and all persons who refuse to recognize the declaratory judgment;

<u>As to Counts 1, 2 and 3</u>

5. Costs and attorney fees incurred in this action;

6. Such other relief as justice may require.

Dated:      May 8, 2024

By:    /s/ PEYMAN ROSHAN
In Pro Per

-36-
COMPLAINT

## VERIFICATION

I am the complainant in this proceeding. The facts alleged in the above complaint are true of my own knowledge.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:        May 8, 2024

By:   /s/ PEYMAN ROSHAN
                In Pro Per

-37-

COMPLAINT